FANCHIER v. GAMMILL.*

(Division B.   Dec. 12, 1927.)

[114 So. 813.   No. 26712.]

DIVORCE.   *Decree for alimony, granted by court of another state, may
be established and enforced by and through equity courts with-
in state.*

Decree for alimony, granted by court of another state, may be
established and enforced by and through equity courts, in ac-
cordance with full faith and credit clause of Federal Law re-
quiring that judgment for alimony with its peculiar right of en-
forcement should be established and enforced by equity courts
in the same manner and to the same extent as though originally
obtained within state.

---

*Corpus Juris-Cyc. References: Divorce, 19CJ, p. 365, n. 7.   As to
right of action to recover installments of alimony accruing under a
decree rendered in another state, see annotation in 59 L. R. A. 178;
9 L. R. A. (N. S.) 1186; 28 L. R. A. (N. S.) 1068.   As to whether a
decree for alimony is within full faith and credit clause of the federal
constitution, see annotation in 41 A. L. R. 1419; 6 R. C. L. Supp. 50.

APPEAL from chancery court of first district, Hinds
county.

HON. V. P. STRICKER, Chancellor.

Suit by Cherie Fanchier against Paul Gammill.   De-
cree of dismissal, and complainant appeals.   Reversed
and remanded.

*Wells, Stevens & Jones,* for appellant.

When our fathers adopted the Constitution of Mis-
sissippi and kept the equity jurisdiction away from the
law courts and conferred it upon the chancery court

they were thoroughly acquainted with the jurisdiction of the equity courts as originally administered in England. Equity assumed jurisdiction of matters of this kind very early in the history of our jurisprudence and the reason was that the common law did not allow the wife to sue her husband and there was no adequate remedy at law. This was the original foundation of equity jurisdiction. See *Garland* v. *Garland,* 50 Miss. 694.

But, that there might be no doubt about the jurisdiction of equity, the present Constitution by section 159 in defining the jurisdiction of the chancery court expressly provides among other things "divorce and alimony."

In addition to the Garland case, *Scott* v. *Scott,* 73 Miss. 575, 19 So. 589, is another strong and leading case. By the express provisions of the Constitution therefore the chancery court in this state has jurisdiction not only of divorce but of alimony, and the jurisdiction is not a· half hearted affair but "full jurisdiction."

Learned counsel for appellee upon the argument of. the demurrer attempted to raise the question that the chancery court of Mississippi had no jurisdiction because it did not grant the divorce. We answer, first, that under the decisions of Mississippi, and particularly the Garland case, equity assumed jurisdiction of a separate bill for maintenance or alimony without any prayer for divorce. And by a long line of decisions and by express statute the court granting divorce may award alimony as a part of the same proceeding, and therefore the wife in Mississippi has always enjoyed the right to sue her husband for alimony either with or without divorce.

Under section 1415, Hemingway's Code, the court in a divorce suit may "make all orders touching the care, custody, and maintenance of the children of the marriage, and also touching the maintenance and alimony of the wife, or any allowance to be made to her, and may, if need be, require sureties for the payment of the sum so allowed."

Section 289, Hemingway's Code, carries into effect the constitutional· jurisdiction by expressly providing that

"the chancery court ·shall have full jurisdiction in the following matters and cases:

"(a) All matters in equity; (b) Divorce and alimony," etc. The chancery court has full jurisdiction and any contention that the chancery court is impotent in a matter of such concern to the former wife and to society is a challenge to the Constitution itself.

*Cadenhead* v. *Estes et al.,* 134 Miss. 569, 99 So. 361, is in our judgment conclusive. The court had jurisdiction of the parties. It had full jurisdiction of the subject-matter. · It is the forum best equipped for the enforcement of the right. It is the forum designated by the Constitution and statutes of Mississippi. The Cadenhead case controls and there is no necessity therefore for reviewing the decisions of other jurisdictions. There is no question here about the right of the husband to have the decree modified according to the after arising circumstances of the parties. There is no suggestion that there has been any circumstances which would justify a modification or that there has been any effort to modify or any contention of that sort. Furthermore, see *Williams* v. *Williams,* 127 Miss. 627.

The judicial history and the reason for the rule put into the organic law of our state that the chancery court shall have full jurisdiction of divorce and alimony finds adequate support in the opinions of the supreme court of the United States whose equity courts have expounded in a learned way the jurisdiction derived from the English court of chancery. It is a matter of common knowledge and has been expressly commented upon by Mr. Pomeroy that Mississippi appropriated and has administered equity as near like the practice and procedure in the high court of chancery in England as any state in the Union. *Barber* v. *Barber,* 16 L. Ed. 226, is an outstanding and leading case and has later been reaffirmed by the supreme court of the United States.

Sometime after the decision in the Barber case the supreme court of the United States delivered its opinion

in the case of *Lynde* v. *Lynde,* 181 U. S. 187, 45 L. Ed.
814, which was apparently misinterpreted and misap-
plied by several courts.　But in the much later case of
*Sistaire* v. *Sistaire,* 218 U. S. 1, 54 L. Ed. 965, Mr. Justice
WHITE for the court again reviewed the Barber case as
well as the Lynde case and expressly ruled that the
Lynde case had not in any wise overruled or modified
the Barber case and again reaffirmed the jurisdiction of
equity as well as the proposition that a decree for ali-
mony as to the installments which have accrued and are
past due and unpaid must be protected under the full
faith and credit clause of the Federal Constitution.

It is interesting to observe that the Sistaire case was
referred to with approval by this court in *Williams* v.
*Williams, supra* (127 Miss. 635).　It has been referred
to with approval by several courts as shown by Volume
20 Rose's Notes and Supplement, and particularly the
following cases, to-wit:　*Cotter* v. *Cotter,* 225 Fed. 475;
*McGregor* v. *McGregor,* 52 Colo. 295, 122 Pac. 391; *Lind-
ham* v. *Hufty,* 44 App. D. C. 594; *Rogers* v. *Rogers,* 46
Ind. App. 513, 92 N. E. 664; *Taylor* v. *Stowe,* 218 Mass.
249, 105 N. E. 891; *Bolton* v. *Bolton,* 86 N. J. L. 625, Ann.
Cas. 1916E 938, 92 Atl. 390; *Campbell* v. *Campbell,* 20
Okla. 842, 115 Pac. 1112; *DeLonge* v. *Fischback,* 153 Wis.
195, 140 N. W. 1126.

In 5 Rose's Notes the Barber case will be found with
a collation of the many cases, state and Federal, in which
it has been referred to with approval.　We refer to only
one or two of the many, to-wit:　*Arrington* v. *Arring-
ton,* 127 N. C. 195, 37 S. E. 213; *Hardin* v. *Hardin* (U.
S.), 49 L. Ed. 1076; *Israel* v. *Israel,* 130 Fed. 240; *Mayer*
v. *Mayer,* 154 Mich. 389, 19 L. R. A. (N. S.) 245; *DeVall*
v. *DeVall,* 57 Ore. 144, 109 Pac. 762; *Gilbert* v. *Hayward,*
37 R. I. 308, 92 Atl. 628; *Wagner* v. *Wagner,* 26 R. I. 27,
65 L. R. A. 816; *Trowbridge* v. *Spinning,* 23 Wash. 63,
62 Pac. 129; *Dow* v. *Blake,* 148 Ill. 87, 39 Am. St. Rep.
163; *Allen* v. *Allen,* 100 Mass. 374; *Brisbane* v. *Dodson,*
50 Mo. App. 174; *Bullock* v. *Bullock,* 51 N. J. Eq. 446, 27

Atl. 436, all holding that decree for alimony made by court of competent jurisdiction may be enforced in another state. *Stewart* v. *Stewart*, 27 W. Va. 175, holding that a decree for alimony in a gross sum made by court of another state is enforceable in West Virginia *by a suit in equity.*

Under the foregoing authorities two or three important questions are conclusively settled. First, the decree for alimony in this case certainly as to the past due installments constitutes an indebtedness and also in such decree as comes within the protection of the Federal Constitution and the necessary effect of the court's ruling in sustaining the general demurrer here and dismissing the bill outright was to deny to appellant her constitutional rights. Secondly, that equity has jurisdiction of a suit for alimony as well as for divorce.

In this connection, while not directly in point, we would call attention to the case of *Fauntleroy* v. *Lum,* 210 U. S. 230, 52 L. Ed. 1039, holding that the Mississippi courts cannot deny to a judgment of a Missouri court based upon an award in arbitration proceedings in Mississippi the full faith and credit guaranteed by the Federal Constitution to the judgments of sister states simply because the original controversy grew out of a gambling transaction in futures in Mississippi, which is made a misdemeanor by our Mississippi statutes. But there is no necessity in our collating the many opinions construing article 4, par. 1 of Federal Constitution other than the cases above directly applicable to divorce and alimony proceedings. The Sistaire case reaffirming as it does the Barber case must be accepted as the final authority on this question. It is a Federal question and we expressly invoke the constitutional rights of our client in the premises. Here there can be no question about the finality of the decree in Nevada. The defendant agreed to the amount and the decree in effect is a consent decree and therefore, for that reason not subject to any modification either in Nevada or in Mississippi. There

is no use for us to enter into a discussion of the Nevada law as to the possibility of an application over there to modify. Upon the present record it must be assumed that there has been no modification and upon the law of Nevada as well as in Mississippi there could be no modification as to past due installments.

Our position with reference to the force and effect of the consent decree in this cause finds support in the case of *Cavenaugh* v. *Cavenaugh,* 106 Ill. App. 209. See, also, 1 Bishop on Marriage and Divorce, sec. 1633, and *Story* v. *Story,* 125 Ill. 608. The foregoing authorities settle the following propositions:

First, that the decree of the Nevada court sued on in this cause as to the eight hundred dollars past due installments was fully protected by the Federal Constitution and must be recognized and enforced by the courts of this state where the parties now reside.

Second, that not only does the Federal Constitution protect appellant in her right to claim the arrears of alimony as an indebtedness, but has a constitutional right to invoke the aid of the Mississippi court to enforce the decree in the same way and to the same extent as the Mississippi chancery court wound enforce one of its own decrees for alimony.

Third, that regardless of the Federal Constitution appellant as complainant in the court below has a legitimate cause of action cognizable exclusively in a court of chancery of Mississippi under the Mississippi Constitution and statutes and the decisions construing the same.

Fourth, that equity has exclusive jurisdiction.

In all events if equity has no jurisdiction of this cause we certainly presented to the court a good cause of action for indebtedness and under section 162, Constitution of Mississippi, the court should have transferred the case to the circuit court in that event and not have dismissed it outright altogether. We shall not here burden the court with a discussion of an elementary proposi-

tion which opposing counsel are bound to admit. Section 162, Constitution of Mississippi, expressly provides that if a litigant gets into the chancery court by error the cause shall be transferred to the circuit court. And it is the duty of the presiding judge to see that this is done. *Murphy* v. *Meridian,* 103 Miss. 110, 60 So. 48; *Robertson* v. *Goodman Dry Goods Co.,* 115 Miss. 210, 76 So. 149.

*Watkins, Watkins & Eager,* for appellee.

Appellant had a plain, adequate and speedy remedy at law and the chancery court had absolutely no jurisdiction. If the appellant is entitled in the state of Mississippi to any relief whatsoever upon the Nevada decree sued upon, then his only remedy is in a court of law, because equity has no jurisdiction to enforce a decree for alimony rendered by a court of another state, the remedy at law being adequate. To show that equity has jurisdiction of this case appellant cites section 289, Hemingway's Code, giving the chancery court full jurisdiction in "(b)  Divorce and alimony," and *Garland* v. *Garland,* 50 Miss. 694, and *Scott* v. *Scott,* 73 Miss. 575, 19 So. 569, but we respectfully insist that this is no authority for the position that a Mississippi court of equity has jurisdiction to enforce an alimony decree of the state of Nevada. There is no question of divorce raised by the bill and there is no question of alimony raised by the bill. It is simply a suit on a debt due under and by virtue of a decree of a Nevada court. The amount of the claim is fixed and certain, and if appellant is entitled to any relief at all in this state, it is in a court of law. If the divorce had been granted by the chancery court in Mississippi, then, of course we admit that it would have jurisdiction to maintain a separate bill for maintenance of the wife. But this case is not like the *Garland case, supra,* but is a case where both the divorce and the alimony were granted by a court of foreign jurisdiction, and this is simply a suit to collect the alimony so

awarded. The parties were divorced in Nevada and the duties and obligations of the marriage *status* have been terminated. The suit is for a debt alleged to be due and owing and there is absolutely no grounds for equitable relief.

*Cadenhead* v. *Estes,* 134 Miss. 569, 99 So. 361, is not in point because it was a transfer of a chancery suit from the chancery court of Perry county to the chancery court of Forest county and involving a question, which, as the court said: "If any court had exclusive jurisdiction, it was the chancery court." No question of a foreign judgment or decree was involved in the case. In *Davis* v. *Davis,* 29 App. Cas. (D. C.) 258, 9 L. R. A. (N. S.) 1071, the appellant, Lucy Davis, filed a bill in the supreme court of the district to recover the sum of three hundred dollars awarded her by the district court of Shawnee county, state of Kansas, which court had also granted her an absolute divorce from the appellee. The court held that equity had no jurisdiction to enforce a decree for alimony rendered by a court of another state, the remedy at law, being adequate.

Appellant has cited and relies mainly for a reversal of this case upon *Barber* v. *Barber,* 21 How. 582, 16 L. Ed. 226, and we insist that it is not in point in this case, for the reason as stated by the court in the Davis case, the divorce was not absolute—merely a judicial separation, and, being the wife of appellee, the appellant could not maintain a suit against him at law so she acquired a separate domicil and filed suit in equity.

In *Bennett* v. *Bennett,* 63 N. J. Eq. 306, 49 A. 501, which was a case similar to the case at bar, the New Jersey court held that equity had no jurisdiction of a suit to enforce the collection of alimony awarded by a court of a foreign state.

In 1 Pomeroy Eq. Jur., p. 229, sec. 178, the rule is stated as follows: "Cases in which the remedy is a mere recovery of money do not ordinarily come under the concurrent jurisdiction. Where the primary right of the

plaintiff is purely legal, arising either from the non-performance of a contract or from a tort, and the money is sought to be recovered as a debt or as damages, and the right of action is not dependent upon or connected with any equitable feature or indictment, such as fraud, mistake, accident, trust, accounting, or contribution, and the like, full and certain remedies are afforded by actions at law, and equity has no jurisdiction; there are cases specially within the sole cognizance of the law.''

And we respectfully contend that the case at bar comes strictly under the rule. The appellant has a liquidated claim in the nature of a debt claimed to be unpaid, due and owing and we insist that only a court of law has jurisdiction.

Appellant cites and relies upon *Sistare* v. *Sistare,* 218 U. S. 1, 54 L. Ed. 965. Our objection to that case is the same as our objection to the *Barber case,* 16 L. Ed. 226; the court was dealing with a decree of separation and from bed and board, and not with an absolute decree of divorce as in the instant case. The jurisdiction of a court of equity to enforce the decree of the foreign court was not questioned in that case, and if so, it was not passed upon by the court.

The rule is stated in 19 C. J. 365, sec. 827, as follows: ''An action at law has been held to lie on a decree for alimony made in another state, and where such remedy is plain, adequate and complete, it has been held that a bill in equity will not lie. In some jurisdictions a court of equity is without authority to enforce any but its own decrees.''

In *Lynde* v. *Lynde,* 181 U. S. 183, 45 L. Ed. 810, it was held that the remedy for the enforcement of a foreign decree awarding alimony was at law and this was not changed or modified in the Sistare case. In this case it was held that a judgment for alimony based upon a decree of a court in another state is properly restricted to the fixed sum already due, excluding provision for future alimony, which is subject to the discretion of the court in

the other state, which may at any time alter it, and that the provisions for bond, sequestration, receiver, and injunction made in a decree for alimony, being in the nature of execution, and not of judgment, could have no extraterritorial operation but that the action of the courts of another state depends on the local statute and practice.

This case is not overruled by the Sistare case, but the court merely said in the Sistare case that this case did not overrule the Barber case, and that the two cases must be interpreted in harmony, and that there was no necessary conflict between them, and that in any event, the Lynde case would merely be restricted and qualified so as not to cause it to overrule the Barber case.

We have been unable to find a single case where a court has been called upon to require a defendant to furnish a bond to secure the payment of future installments of alimony awarded by a court of a foreign jurisdiction. Nor have we been able to find a case where a court has been asked to attach the person of a defendant for failure to observe the orders of a court of a foreign jurisdiction with reference to the payment of installments, yet this is what was asked the chancery court by the bill filed in this case, as we interpret that bill. The bill asks that "This Honorable Court shall enforce the rights of complainant to alimony now in arrears in the said sum of eight hundred dollars, ($800) by all appropriate remedies available by both attachment and decree" . . . "and give bond for future payments of alimony." We take it that by attachment appellant meant attachment of the person—contempt proceedings.

In *Mayer* v. *Mayer,* 154 Mich. 386, 117 N. W. 890, 129 A. S. R. 477, 19 L. R. A. (N. S.) 245, it was held that authority to punish as for contempt of an order made in a suit for divorce, does not extend to the authorization of such punishment for non-compliance with a decree directing payment of money under a foreign decree for alimony. The rule is also stated in 19 C. J. 366.

There is a difference between an ordinary debt and a liquidated claim for past due installments of alimony. Where a claim for past due installments of alimony based on a decree of a court of foreign jurisdiction is reduced to judgment or decree by a domestic court it is then just the same as any other judgment debt, and an attachment of the person as for contempt for non-compliance with the judgment or decree will not lie. The remedies available for the enforcement of decree awarding alimony under the laws of the state of Mississippi would not be available to appellant in this suit. His remedy is at law, and he may enforce such judgment as he may obtain by execution.

In *Paige* v. *Paige* (Mass.), 75 N. E. 92, a petition in equity was filed in the Massachusetts court for the enforcement of a decree for weekly alimony awarded the petitioner by a court of the state of Maine, and asked among other things, that respondent be ordered to furnish sufficient security for the payment of such sums as might from time to time become justly due under said decree. A demurrer was interposed to the petition and the same overruled by the trial court. The supreme court held it should have been sustained.

It has long been the law in the state of Mississippi that where the remedy at law is plain, adequate and complete, equity will not take jurisdiction, and we think it unnecessary to cite authorities to sustain this proposition. In this case the suit is for the collection of a certain sum of money, the amount of which is fixed and definite—eight hundred dollars. Certainly the appellant does not deny that she has a plain, adequate and complete remedy at law. There is not a single ground of equitable relief charged in the bill.

In *Lutz* v. *Second Judicial District Court of Nevada,* 29 N. W. 152, 86 Pa. 445, it was held that where an affidavit for an order committing defendant for contempt for failure to comply with an order requiring payment of alimony and suit money in a divorce case failed to

allege petitioner's ability to make payment required of him or facts from which such ability might be properly inferred, it was fatally defective. See *Levine* v. *Levine,* 187 Pac. 609.

In this brief we have not gone into a discussion of the Barber case, the Lynde case, and the Sistaire case. These cases are all discussed at length in the notes to L. R. A. and in Roses notes. Notes under the Sistaire case are cited in 28 L. R. A. (N. S.) 1068; 20 Roses notes, 99; 54 L. Ed. 905. Notes under the Lynde case are cited in 18 Roses notes, p. 777; 45 L. Ed. 810; 3 Supplement to Roses Notes, p. 1248.

A majority of the cases hold that installments of alimony which have accrued at the time of the filing of the suit may be enforced in a sister state under the full faith and credit clause of the constitution. Nearly all of the authorities hold that remedy for the collection of such past due installments of alimony is at law.

In *Golder* v. *Golder,* 235 Mass. 262, 126 N. E. 382, it was held that the remedy for the enforcement of alimony awarded the wife in a final decree of divorce was at law. The bill in this case asks for enforcement of the claim for arrears of alimony by attachment. It has been held in a recent decision by this court that no court except the court whose judgment or order has been defied can try and punish a contemptor. *Prine* v. *State,* 143 Miss. 242, 108 So. 717 (1926).

Argued orally by *J. Morgan Stevens,* for appellant, and *Hardy R. McGowen,* for appellee.

HOLDEN, P. J., delivered the opinion of the court.

The suit is by bill in equity seeking to establish and enforce a decree for alimony rendered by the district court at Reno, Nev., in which proceeding divorce and alimony were adjudged against the appellee, Paul Gammill, in favor of the appellant, Cherie Fanchier, his di-

vorced wife. The amount of the alimony was one hundred dollars per month, and it appears from the bill that eight hundred dollars as alimony is now due by appellee to appellant under the decree involved.

Touching the facts briefly, but sufficient to understand the decision, the appellee, Paul Gammill, married the appellant, Cherie Fanchier, in 1925, in Hinds county, Miss. After they removed to Reno, Nev., Paul Gammill filed suit for divorce, and his wife cross-complained, praying for a divorce and alimony; and a written agreement with reference to property rights of the wife was entered into between the parties, wherein the husband agreed to pay the wife one hundred dollars per month as alimony if the decree for divorce was granted by the court; and the agreement further provided that the sum of one hundred dollars should be paid monthly, without increasing or decreasing the sum, so long as Mrs. Gammill should remain single. This agreement was exhibited to the court in Nevada, and was approved by the court which granted the divorce and the alimony in favor of the wife.

The substance of the agreement between the parties was embodied in the decree of the Nevada court, and, in part, is as follows:

"It is further ordered, adjudged, and decreed that plaintiff pay to defendant the sum of one hundred dollars ($100) each and every month, beginning with the 20th day of June, 1926, and payable each and every month thereafter on the said date for her support and maintenance until she remarry, in full settlement of all property rights, and also her right to maintenance and support, said amount not being subject to change.

"It is further ordered, adjudged, and decreed that defendant may be and she hereby is permitted to resume her maiden name of Cherie Fanchier."

Soon after the decree for alimony and divorce was rendered by the Nevada court, the parties returned to Mississippi, where they now reside.

Upon failure of the husband, Paul Gammill, for eight months, to pay the one hundred dollars per month as alimony to his wife, this bill was filed to establish and enforce the Nevada decree for alimony by and through the court of equity of our state. There was a demurrer filed to the bill, which was sustained by the chancellor; hence this appeal. The demurrer presented many grounds for dismissing the bill, and we may say, at this juncture, that we do not find in any of the grounds presented sufficient merit to warrant a discussion of the points, except one, which is the main question in this case, and which will be referred to herein later on.

Here are some of the points presented by the demurrer which we do not think are maintainable, and we shall not discuss except to call attention to them:

(1) It is contended that the decree of the Nevada court was interlocutory and not a final decree; (2) that the bill failed to state that the appellee was able to pay the installments of alimony; (3) that the bill does not allege that the complainant is still a single woman; (4) that the bill does not state that the Nevada decree is still in force and effect and unappealed from; (5) and, finally, that the chancery court of our state has no jurisdiction in the matter, because the decree of the Nevada court amounts to no more than a judgment at law.

None of the points, except this last one above, are sufficiently meritorious to discuss, because all of the things that the appellee contends the bill ought to have charged are negative matters to be set up and shown by the defendant; but the last point above mentioned will now be discussed:

The question presented, which is a new one in this state, is whether or not a decree of divorce and alimony rendered by a foreign state court can be established and enforced by and through courts of equity in our state, or whether such a decree for alimony granted in another state can be enforced only by execution as a judgment at law, when brought from a foreign state into our state.

This question is well argued by counsel, and there are many decisions cited of other states, as well as the Federal courts, and it seems there is a division of opinion by the different courts as to what is the correct rule with reference to the establishment and enforcement of the judgments or decrees for alimony granted by the courts of foreign states.

We have tried to carefully review these decisions and determine which we think would be the better rule to announce as the law in our state, and we have come to the conclusion that a decree for alimony granted by a foreign court may be established and enforced by and through the equity courts of our state, and that our equity courts may assume jurisdiction of the alimony decree and establish and enforce it, and that therefore the decree of the chancery court sustaining the demurrer to the bill herein was error which must result in reversal.

It is our view that, on account of the character of a judgment for alimony, which rests, to some extent, upon public policy, in requiring a husband to support his wife and children, due to the sacred human relationship, and that they may not become public charges and derelicts, the decree for alimony, with the extraordinary power of enforcement by attachment and contempt proceedings, should be established and enforced by our equity court, which has full and sole jurisdiction of all matters of divorce and alimony; because to hold that a foreign judgment for alimony can be enforced in this state only by execution, the same as judgments at law, would be to impair or to deprive a foreign judgment for alimony of its inherent power of enforcement by attachment and contempt proceedings. Thus, as we view it, to so hold would be to disregard the "full faith and credit" clause of the Federal law, which we interpret to mean that the judgment, with its peculiar right of enforcement, as one for alimony, should be established and enforced by the equity courts of our state in the same manner, and to

the same extent, as it could have been enforced by our court if originally obtained in our state.

A judgment or decree for alimony carries with it a special power and right of enforcement not given in judgments at law. There is a difference between a judgment for money or property and that of a decree for alimony; and the decree for alimony, because of such difference in the character of the obligation, may be enforced by more efficient and effective means than those given to the enforcement of judgments at law. Why should this extraordinary right of enforcement, due to the character of the judgment, be destroyed and annulled in its power, when it is attempted to be established and enforced in our state upon a decree rendered in a foreign state? An insolvent husband would become immune from the alimony decree if such was the law. It would amount to a partial sterilization of the force of the judgment for alimony.

There can be no sound reason for such a view. We should not hold that all foreign judgments are alike when it comes to enforcing them in our state, and that execution on a judgment at law is the only method that can be prosecuted, even though such foreign judgment be one for alimony; that such judgment cannot be enforced by proceedings to attach or cite defendant before the court to show cause why he should not be punished for contempt in failing to carry out his obligation to pay alimony to his wife, as solemnly decreed by a court of competent jurisdiction. Such a view is not the better one; and, while there may be respectable authority to support it, we decline to follow it and shall adopt that rule which allows the enforcement of a foreign decree for alimony in the same manner that it could have been enforced, if originally obtained here, to-wit, by attachment and contempt proceedings in the chancery court of our state. The following authorities bear on the question involved, and are cited for that reason: *Williams* v. *Williams,* 127 Miss. 627, 90 So. 330; *Barber* v. *Barber,* 21

How. 582, 16 L. Ed. 229; Story's Equity Pleadings (6th Ed.), p. 59, section 61; Cooper's Equity Pleadings, chapter 3, pp. 149, 150; *Livingston* v. *Story*, 9 Pet. 632, 9 L. Ed. 225; volume 20, Rose's Notes and Supplement; *Cotter* v. *Cotter* (C. C. A.), 225 F. 475; *Sistare* v. *Sistare*, 218 U. S. 16, 30 S. Ct. 682, 54 L. Ed. 905, 28 L. R. A. (N. S.) 1068, 20 Ann. Cas. 1061; *Lynde* v. *Lynde*, 181 U. S. 183, 21 S. Ct. 555, 45 L. Ed. 810; *Campbell* v. *Campbell*, 28 Okl. 842, 115 P. 1112; *De Longe* v. *Fishback*, 153 Wis. 195, 140 N. W. 1126; *Fauntleroy* v. *Lum*, 210 U. S. 230, 28 S. Ct. 641, 52 L. Ed. 1039; *Cavenaugh* v. *Cavenaugh*, 106 Ill. App. 209; *Pennington* v. *Gibson*, 16 How. 65, 14 L. Ed. 847; *Bennett* v. *Bennett*, 63 N. J. Eq. 306, 49 A. 501; *Bullock* v. *Bullock*, 52 N. J. Eq. 561, 30 A. 676, 27 L. R. A. 213, 46 Am. St. Rep. 528; Pomeroy's Eq. Jur. vol. 1, p. 229, section 178; 19 C. J., p. 365, section 827; *Mayer* v. *Mayer*, 154 Mich. 386, 117 N. W. 890, 19 L. R. A. (N. S.) 245, 129 Am. St. Rep. 477; *Page* v. *Page*, 189 Mass. 85, 75 N. E. 92, 4 Ann. Cas. 296.

The decree of the lower court is reversed and the cause remanded.

*Reversed and remanded.*