CAMPBELL, Judge.
In this appeal, appellant, former wife, appeals the trial court’s denial of her motion to enforce a Virginia judgment against appellee, former husband, for child support arrearages. The Virginia judgment had been duly recorded in Pasco County, Florida, pursuant to section 55.505, Florida Statutes (1985). We reverse.
Appellant (“wife”), and appellee (“husband”), were married in Virginia on December 26, 1964. Three children were born: the first on September 5, 1966, the second on November 8, 1967, and the last on January 20, 1969. On August 28, 1968, when wife was four months pregnant with the third child, husband abandoned wife and the two infant children. Wife thereafter received public assistance for two years. She returned to college, obtained a degree and employment, and raised and supported her children.
Husband was arrested in Virginia on January 15, 1969, after failing to make child support payments. He was ordered to pay $50 per week as child support beginning on January 20, 1969. Husband made two weekly payments and disappeared. He was last seen by wife in March 1969, and thereafter left Virginia and never returned. He apparently assumed the name of James Parker and was later declared dead. Wife obtained a final divorce decree in Virginia on June 20, 1972, on the grounds of desertion and abandonment.
Husband was discovered in Pasco County, Florida, in 1985. The Fairfax County, Virginia, district court issued a rule to show cause to husband regarding arrearag-es in child support on June 6, 1985. Husband filed an answer to the rule to show cause, but failed to appear at the hearing on the rule on July 11, 1985. The Virginia court reduced the arrearages as of July 11, 1985, to a final judgment in the amount of $106,073.58. The $50 per week child support has continued to accrue since July 11, 1985. The Virginia judgment for arrearag-es was not appealed. It was filed with the Clerk of the Circuit Court of Pasco County on December 23, 1985.
On January 27, 1986, the Clerk of the Circuit Court of Pasco County mailed notice of the recording of the judgment to husband pursuant to section 55.505. Husband has never contested the jurisdiction of the Virginia court, nor the validity of the judgment. Wife filed a motion seeking to enforce the judgment by invoking the contempt and equitable powers of the Circuit Court of Pasco County, Florida, on August 21, 1986.
Wife’s motion to enforce the judgment was denied by the Pasco County Circuit Court judge solely upon his ruling that he had no jurisdiction to enforce the judgment by way of contempt or the exercise of any equitable powers of the Florida court. We conclude that the trial judge erred in light of the express language of the supreme court in Sackler v. Sackler, 47 So.2d 292 (Fla.1950), and as later cited and approved in Lanigan v. Lanigan, 78 So.2d 92 (Fla.1955); Haas v. Haas, 59 So.2d 640 (Fla.1952); Grotnes v. Grotnes, 338 So.2d 1122 (Fla. 4th DCA 1976); West v. West, 301 So.2d 823 (Fla. 2d DCA 1974) and Miller v. Miller, 105 So.2d 386 (Fla. 1st DCA 1958).
*1236 In Sackler, the wife, in a New York divorce proceeding, was awarded custody of the parties’ two minor children and the sum of $20 per week as child support and alimony. The husband failed to pay and the wife applied to the New York court for a judgment for the arrearages. Such a judgment was entered by the New York court. The wife subsequently sought enforcement of that judgment in Florida, where the husband had taken up residence. The Florida court entered a money judgment for the amount of the arrearages, but denied the wife of the benefit of equitable remedies to enforce either her New York judgment for arrearages or future payments as they became due.
Our supreme court held that the trial court erred in denying the wife equitable remedies, including contempt, in the enforcement of the judgment. The holding of the Sackler court so often thereafter cited and relied upon was that:
It should be noted, in passing, that there is no question here as to the enforceability, by ordinary legal process, of the judgment for arrearages, since such judgment is not subject to modification by the New York court and is thus entitled to full faith and credit in the courts of this state. Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 686, 54 L.Ed. 905, 28 L.R.A., N.S., 1068, 20 Ann.Cas. 1061 [1910]; Collins v. Collins, 160 Fla. 732, 36 So.2d 417 [1948].
As to the authority of this court to apply equitable remedies in the enforcement of a final decree for alimony for the wife and support money for the children, this court in McDuffie v. McDuffie, 155 Fla. 63, 19 So.2d 511 [1944] settled this question by adopting the rule laid down in Fanchier v. Gammill, 148 Miss. 723, 114 So. 813 [1927], to the effect that an alimony decree of a sister state will be enforced by the same equitable remedies, including contempt proceedings, as are applicable to the enforcement of a local decree for alimony. In the McDuffie case, this court quoted with approval the statement in the Fanchier case that “The theory on which the Supreme Court of Mississippi adopted this view was that a judgment for alimony rests largely on public policy in that the husband should be required to support his wife and children, that they not become derelicts and a charge on the public, that a judgment in equity is more efficacious than a judgment at law in that it may be enforced by attachment or contempt, that a court of equity has sole jurisdiction in matters of divorce and alimony and that to hold that a foreign judgment for alimony can be enforced only by execution at law would amount to depriving it of its inherent power of enforcement by attachment and contempt.” [155 Fla. 63, 19 So.2d 512.]
We hold, therefore, under the authority of McDuffie v. McDuffie, supra, that the lower court erred in denying to the plaintiff equitable remedies, including contempt proceedings, for the enforcement of the New York judgment for the alimony arrearages.
47 So.2d at 293.
In Haas, our supreme court held:
A nonresident wife who seeks to enforce in the courts of this state a final alimony decree or money judgment based thereon entered by a court in another state may do so in a court of law by a common-law action to secure a money judgment for the delinquent alimony, or she may ask our equity court to exert its equitable remedies in the enforcement of such decree. If she chooses the latter forum, she must be prepared to meet any equitable defenses which are recognized in this state in an equitable action to enforce a domestic decree for alimony. Sackler v. Sackler, supra. This is but another application of the familiar maxim that he who seeks equity must do equity.
59 So.2d at 643.
Appellee husband argues here that Lamm v. Chapman, 413 So.2d 749 (Fla.1982) is the controlling case and should be applied by us as having superseded Sack-ler, Lanigan and Haas. We do not so conclude.
Lamm primarily involved the issue of whether the Department of Health and Rehabilitative Services could assert a custodi *1237 al parent’s rights to child support through contempt proceedings against the support obligated parent. Lamm did not involve an attempt to enforce a judgment for child support arrearages by contempt proceedings. The essential holding of the Lamm court was:
We hold that the acceptance of public assistance for the support of a dependent child vests in the department the authority to proceed with all remedies available to the child’s custodian. The state must have the power to ensure that the responsible parent, to the extent that he or she has the ability to pay, reimburse the state for public assistance moneys expended for the benefit of a dependent child and provide continuing reasonable child support.
413 So.2d at 753.
The language in Lamm relied upon by appellee, however, was language that immediately preceded the holding of the court and explained generally the Lamm court’s view of the rights of parties seeking to enforce child support obligations. The court stated:
We note that, although contempt may be the most generally used means of enforcing the child support obligation, it is not the only remedy available to the state or to the child’s custodian. Either could obtain a judgment for an arrearage of child support. In the event that such a judgment is obtained, it constitutes a judgment debt upon which execution may issue and for which traditional enforcement remedies, including liens and levies, may be utilized. The contempt power of the court is no longer available to enforce the child support obligation for those arrearages which have been reduced to a judgment debt for which execution may issue, regardless of whether the judgment was obtained by the department or by the custodial parent.
413 So.2d at 753.
That language is clearly dicta. The Lamm court neither cites, discusses, overrules nor expressly recedes from Sackler, Lanigan and Haas. We must, therefore, assume that Sackler and its progeny is still the law of this state. Tamer v. State, 463 So.2d 1236, 1238 (Fla. 4th DCA 1985).
This court, however, being mindful of Hoffman v. Jones, 280 So.2d 431 (Fla.1973), and the admonition to this court in Strickland v. State, 437 So.2d 150, 152 (Fla.1983), certifies to our supreme court as a question of great public importance, the following:
DO THE CIRCUIT COURTS OF THIS STATE HAVE JURISDICTION TO ENFORCE A FOREIGN JUDGMENT FOR ARREARAGES OF ALIMONY OR CHILD SUPPORT BY MEANS OF EQUITABLE REMEDIES INCLUDING CONTEMPT?
Reversed and remanded for further proceedings consistent herewith.
DANAHY, C.J., and THREADGILL, J., concur.